IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DOLLY'S CAFÉ, LLC d/b/a LULU'S PLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| ILLINOIS GAMING BOARD, DON TRACY, | ) | |
| AGOSTINO LORENZINI, RON JONES AND | ) | |
| JOHN DOES 1-20, | ) | |
| | ) | |
| Defendant(s). | ) | |

## COMPLAINT

Now Comes, the Plaintiff, DOLLY'S CAFÉ, LLC d/b/a LULU'S PLACE (the "Plaintiff"

or "Dolly's Café"), and in support of this complaint against the ILLINOIS GAMING BOARD

(the "IGB"), DON TRACY, in his individual capacity as the Chairman of the ILLINOIS

GAMING BOARD, AGOSTINO LORENZINI , in his individual capacity as the Acting

Administrator of the ILLINOIS GAMING BOARD ("IGB") (from time to time these individuals

are referred to as the "Individual Defendants"), and RON JONES in his individual and official

capacity as an IGB Investigator, and states as follows:

## JURISDICTION AND VENUE

This action is brought pursuant to 42 U.S.C. § 1983 to remedy deprivations, under color of

state law, of rights guaranteed by the Fourteenth Amendment to the United States Constitution. As

such, this Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. §§ 1331 and 1343

1

(a)(3), as it arises out of violations of the Fourteenth Amendment to the United States Constitution and seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution. Pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure, this Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper. Rule 65 of the Federal Rules of Civil Procedure authorizes injunctive relief.

This Court may also exercise supplemental jurisdiction over the state law claim for administrative review pursuant to 28 U.S.C. § 1367 (a), as this claim is so related to the federal claims over which this Court has original jurisdiction that it forms part of the same case or controversy under Article III of the United State Constitution.

Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the defendants reside and a substantial part of the events giving rise to the claims asserted herein occurred in this district.

This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

## NATURE OF CASE

This is an action against the Individual Defendants in their official capacity as the Members and the Administrator of the IGB, arising from their decision to deny LULU'S PLACE request for a hearing after denying access by Illinois Gaming Board Agent Ron Jones Plaintiff's right to enjoy his gaming licensed granted by the Illinois Gaming Commission to LULU'S PLACE, of their gaming license under the Video Gaming Act. The Individual Defendants' actions have deprived LULU'S PLACE of its property without an opportunity to be heard in violation of the Due Process Clause of the Fourteenth Amendment, and the Equal Protection Clause thereof.

In addition, the Individual Defendants adopted and implemented rules under the Video Gaming Act that provide hearings as a matter of right to licensees whose licenses are revoked by

2

the IGB but do not provide hearings as of right to licensees, such as LULU'S PLACE, whose license was restricted.

By treating LULU'S PLACE differently and, indeed, worse than other similarly situated licensees whose license are revoked/restricted, the Individual Defendants have deliberately, and intentionally violated LULU'S PLACE rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment. LULU'S PLACE seeks declaratory and injunctive relief to remedy these constitutional violations as well as review of the IGB's decision to effectually LULU'S PLACE gaming license without Due Process of Law in Violation of the 14th Amendment.

## PARTIES

DOLLY'S CAFÉ, LLC d/b/a LULU'S PLACE is a Video Gaming Café located at 2010 Penny Avenue, Unit C, East Dundee, Illinois 60118, owned by Louise Rycraft, who after paying the required fees and submitting the required application, was awarded an Illinois Gaming License for five slot machines on or about November 16th, 2017 (License No. 150703651), and therefore a Licensed Establishments.

DOLLY'S CAFÉ, LLC d/b/a DOLLY'S is a Video Gaming Café located at 2010 Penny Avenue, Unit D, East Dundee, Illinois 60118, owned by Louise Rycraft, who after paying the required fees and submitting the required application, was awarded a Illinois Gaming License for five slot machines on or about April 30th, 2014 (License No. 130705994), and therefore a Licensed Establishment.

The IGB is an agency of the State of Illinois that was created pursuant to the Riverboat Gambling Act, 230 ILCS 10, for the purpose of enforcing certain gaming laws in Illinois. The IGB also enforces the Video Gaming Act, 230 ILCS 4 (the "Video Gaming Act").

Mr. Tracy is the Chairman of the IGB. At all times relevant, Mr. Tracy was acting under

3

color of state law and is named in his individual capacity.

Mr. Lorenzini is the Administrator of the IGB. At all times relevant, Mr. Lorenzini was acting under color of state law and is named in his individual capacity.

Mr. Ron Jones is an Investigator appointed by the IGB, in his official capacity, pursuant 230 ILCS 40/79, and possess only the powers set forth therein.

All Defendants to this action are sued in both their individual and official capacities, jointly and severally.

## BACKGROUND

On July 13, 2009, the Illinois legislature passed the Act. The Act authorized a new form of gaming in Illinois by approving the placement and operation of Video Gaming Terminals ("VGTs") by approved "Terminal Operators" at "Licensed Establishments." See 230 ILCS 40/5. As the agency responsible for administering the Act, the IGB is responsible for determining the eligibility of applicants for licensure under the Act.

Although legalized in July 2009, the advent of "live" video gaming in Illinois is only a recent development. After an over three-year start-up period, video gaming finally went "live" on October 9, 2012. During the three-year period after passage of the Act and before approval of the first VGT operations, the nascent video gaming industry emerged. Many prospective Licensed Establishments, like the plaintiff in this case, started their video gaming businesses at the time of passage of the Act or during the application process.

On November 16, 2017 Dolly's Cafe LLC d/b/a Lulu's Place was approved for a gaming License at the IGB's meeting.

Plaintiff paid the $100.00 fee for the license and on November 21, 2017 Plaintiff received the certificate, license #150703651, good for one year, with no restrictions.

4

Gold Rush Gaming scheduled with Scientific Games and the Illinois Gaming Board to install and go live with 5 games, on November 28, 2017.

Gold Rush technicians, who are the terminal operators and a technician from Scientific Games, who operate the computers for the State of Illinois, arrived that afternoon to set up the games and went live.

Investigator Ron Jones arrived, and the games were tested with currency and the revenue was registered with the Illinois Gaming Board's revenue site.

Agent Jones said to me, upon his arrival, that I had the business next door and that wasn't allowed.

Plaintiff told Jones that her application was pending and litigated for the past two years, the gaming board was well aware of the circumstances, and that she was approved and have a valid license, which was displayed for Jones to see.

Investigator Jones took photographs, and went outside to make a telephone call, which Plaintiff presumes was to a supervisor. Jones came back into the store and instructed the technicians to shut the games down.

At 4:33 pm on November 28th, 2017, Plaintiff received an email from the IGB that Dolly's were being restricted to 5 terminals between the two businesses.

## FACTUAL ALLEGATIONS RELEVANT TO ALL COUNTS

Plaintiff incorporates for the foregoing paragraphs as if fully set forth herein.

Lulu's Place made application for a video gaming license on October 12, 2015. During the application process (which took two years) there had been two inspections of Lulu's Place made by the Board to determine the fitness of the location, yet no determination had been made.

Two different lawyers at separate times sent letters to the Board, without response. It took

5

a mandamus action in the Circuit Court of Cook County, Illinois under case number 2017 CH 13066, to get the Board to make a decision and get to the point of licensing. On November 16, 2017, the Board approved an unrestricted license to Lulu's Place.

On November 28, 2017, an Investigator of the Board, Mr. Ron Jones, while at the location of Lulu's Place, and after the video gaming terminals had been turned on, then secretly and without notice shut down the terminals, exceeding his powers enumerated within 230 ILCS 40/79, thereby depriving the Plaintiff her right to enjoy her video game license, in violation of the Due Process and Equal Protection of the 14th Amendment.

On the same date of November 28, 2017, the Board issued a electronic communiation to Lulu's Place restricting the license

In said letter restricting Lulu's Place license, the Board invoked Rule 810 {c):

> "When two or more adjacent businesses appear to the Administrator to be a single business, or are operated by the same or commingled ownership, then the Administrator may limit those businesses to the maximum number of video gaming terminals. The maximum will be the number permitted under Illinois law for one business as the total number of video gaming terminals authorized for both or more such businesses, where the administrator determines that the limitation would further the intent of the Act and the integrity of video gaming in the State of Illinois."

However, the Board never enunciated how the limitation would further the intent of the Act and the integrity of video gaming in the State of Illinois.

In violation of the Illinois Freedom of Information Act, 5 ILCS 140 (the "Freedom of Information Act"), despite numerous public records requests, the IGB has refused to provide the Plaintiff with documentation related to Mr. Jones' education, his training, powers and authority, his text messages emails and information as to how the Video Gaming Act is enforced by the IGB.

Currently the action still remains in effect and the Plaintiff has lost business revenue, due to the restrictions on its Video Gaming Establishment License, as a direct and proximate cause of

the action and inaction of the Defendants, jointly and severally, Plaintiff has sustained compensatory damages to be proven at trial in amount in excess of $152, 694.00.

The entire process of how the Video Gaming Act is enforced by IGB is shrouded in secrecy.

The entire process of how Gaming Special Agents such as Mr. Jones go about enforcing the Video Gaming Act is shrouded in secrecy.

Based upon information and belief, any and all licensed establishments are permitted to maintain and enjoy their video game terminal license until such time as they have been afforded notice and an opportunity to he heard pending the finalization of a restriction or revocation proceeding, which was not the case for the Plaintiff in this suit.

## VICARIOUS LIABILITY

For each and every count herein, Plaintiff assert vicarious liability against the Defendant, Mr. Jones for all actions taken by Defendant, Mr. Jones as described herein, who undertook these actions while acting in the course and scope of his employment with the Defendant, IGB who was carrying out the policies and procedures of Defendant, IGB, who was improperly trained by Defendant, IGB who acted with the approval and consent of the Defendant, IGB both before and after the incident described herein, and who never deviated from the established procedures or lack thereof as established and promulgated by the Defendant, IGB to its agents, officers and employees, such as Defendant, Mr. Jones.

## CAUSES OF ACTION

### Count I

**42 U.S.C. §1983 – DEPRIVATION OF PROCEDURAL DUE PROCESS UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION**
**(Against the Individual Defendants in their Official Capacity)**

7

Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

Plaintiff went through the application process, and was granted a video license, without restriction, and without Notice or an opportunity to be heard, was deprived Plaintiff's right to enjoy said license as a direct and proximate cause of the actions and inaction of the Defendant's Jointly and severally, from November 28th, 2017, to the date of this filing and therefore the Defendant caused Plaintiff to sustain compensatory damages in an amount to be proven at trial in excess of $152,694.00

### Count II

### 42 U.S.C. §1983 - DEPRIVATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION
(Against All Individual Defendants in their Official Capacity)

Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

Based upon information and belief, TEN PENNIES PLACE LTD. d/b/a Ten Pennies Internet Café, was awarded the same license at the Plaintiff on or about November 21st, 2013(License No. 130703427), which is and was at all times relevant hereto known to all of the Defendant's jointly and severally, located 210 S. 4th Street, Ogle County, Oregon, IL 61061.

Based upon information and belief, TEN PENNIES PLACE LTD., d/b/a Ten Pennies Internet Cafe-Too was again awarded the same license as the Plaintiff in this case on or about March, 26th, 2015 (License No. 140704202) located at Ogle County 212 S. 4th Street, Oregon, IL 61061.

Both Ten Pennies Internet Café and Ten Pennies Internet Café-Too, have the same license as the Plaintiff, and both share a common wall between the two separate businesses, and absent any legitimate prosecutorial differences, though this information is known to the Defendants, Ten Pennies Internet Café and Ten Pennies Internet Café-Too are allowed to enjoy their separate but

equal gaming licenses to operate five video gaming terminals each, for a total of 10 terminals, absent any intervention whatsoever from Investigator Ron James of the IGB agents of officers.

DOLLY'S CAFÉ, LLC d/b/a LULU'S PLACE and DOLLY'S CAFÉ, LLC d/b/a Dolly's and Ten Pennies Internet Café and Ten Pennies Internet Café-Too, for all intents and purposes are similarly situated for all intents and purposes and there exists no rational or legitimate basis for the Defendants to show the Plaintiff's the disparate treatment they have received in violation of the Equal Protection Clause of the 14th Amendment, and therefore the actions and inactions of the Defendants in this case has caused the Plaintiff sustain compensatory damages in an amount to be proven at trial in excess of $152, 694.00.

### Count III

### STATE CLAIM FOR ADMINISTRATIVE REVIEW (735 ILCS 5/3-101)
### (Against the Illinois Gaming Board)

Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

On November 16, 2017, the Illinois Gaming Board (Board) approved Licensee for a Video Gaming Establishment License. The Board seeks to limit the number of video gaming terminals (it in fact turned off the terminals the same day that they were installed 11/28/17) that Licensee may possess. The Board has the authority pursuant to Illinois Gaming Board Rule 810 (c) to restrict the number of video gaming terminals that a Licensee may possess, but said authority is clearly discretionary. The Board's reasoning is that a common wall and common ownership has made this Licensee subject to the video gaming terminal restriction. Licensee's position is that the common ownership and common wall does not run afoul of § 810 (c) and that it was never given a chance to demonstrate same. It shall do so, infra.

9

Lulu's Place made application for a video gaming license on October 12, 2015. (See application attached hereto and made a part hereto as Exhibit A). During the application process (which took two years) there had been two inspections of Lulu's Place made by the Board to determine the fitness of the location, yet no determination had been made. Two different lawyers at separate times sent letters to the Board, without response. (See letters attached hereto and made a part hereof as Exhibit "B") It took a mandamus action in the Circuit Court of Cook County, Illinois under case number 2017 CH 13066, to get the Board to make a decision and get to the point of licensing. On November 16, 2017, the Board approved an unrestricted license to Lulu's Place. On November 28, 2017, an agent of the Board, while at the location of Lulu's Place, and after the video gaming terminals had been turned on, then secretly and without notice shut down the terminals. On the same date of November 28, 2017 the Board issued a letter to Lulu's Place restricting the license {See letter attached hereto and made a part hereof as Exhibit C). In said letter restricting Lulu's Place license, the Board invoked Rule

810 {c):

"When two or more adjacent businesses appear to the Administrator to be a single business, or are operated by the same or commingled ownership, then the Administrator may limit those businesses to the maximum number of video gaming terminals. The maximum will be the number permitted under Illinois law for one business as the total number of video gaming terminals authorized for both or more such businesses, where the administrator determines that the limitation would further the intent of the Act and the integrity of video gaming in the State of Illinois."

However, the Board never enunciated how the limitation would further the intent of the Act and the integrity of video gaming in the State of Illinois.

The Board argues that the issuing of a license and restricting same are two different acts. It states that the licensure is wholly apart from the determination of the restriction.

10

However, in this instance, Dolly's Cafe, LLC was the applicant and a licensee for the original location. It applied as Lulu's Place for the second location. So, here, the Board knew that there was an applicant that was a present licensee and after two inspections in consideration of the application for Lulu's Place, knew, admittedly, the two locations to be adjacent to each other and under the same ownership. The Board knew or should have known that it would restrict the license for Lulu's Place and yet it issued a license without restriction. The Board also never stated the reasons for the restriction and just merely spewed the language of Rule 810 (c).

And, as demonstrated in the statement of facts, supra, the Board left out several facts in its UNDISPUTED FACTS section of its motion. Namely that the application took two years and but for a mandamus action being filed, there is no telling how long the Board would have taken. Also, the Board did this in secret and never had a meeting or posted or notified anyone of the action and its agent shut down the machines on November 28, 2017, sua sponte. A letter by the Board followed on the same day only after the action had been taken.

The Board is correct that the Administrator has discretionary authority to restrict the number of terminals in accordance with Rule 810 (c). 11111. Admin. Code §1800.810 (c). Also, Licensee agrees with the case cited by the Board, Solon v. Midwest Medical Records Ass'n., 236 Ill. 2d433,440, 925 N.E. 2d 1113 (2010) that "The most reliable indicator of the [legislative] intent is the language of the statute [itself], which must be given its plain and ordinary meaning." The strict and ordinary meaning makes this statute or rule absolutely discretionary.

However, the Board has treated Rule 810 (c) as absolute authority to make a conclusory determination without regard to the licensee. The board offered no hearing or even notice of a hearing before the actions taken. They now argue that the Board merely had the authority and if the "prerequisites exist" it can make an adverse determination without further inquiry or input.

11

The Board goes on to argue the "prerequisites" of common ownership and a common landlord. These items have never been in dispute. Dolly's Cafe, LLC applied under its own name for a license for Lulu's Place (See Exhibit A attached hereto). This is not disputed and never has been. Dolly's Cafe, LLC and Lulu's Place had a common wall which also has never been in dispute. As stated, supra, the Board had sent agents to the applicants location on two separate occasions during a two year period in which they were "stone-walling and stalling" the process.

So the Board absolutely knew that the prerequisites existed and still approved the application as well it should have. However, to change its determination and to later limit the number of video game terminals was arbitrary and capricious.

Summary judgment is a drastic method of disposing of a case, and it should not be employed unless the pleadings, depositions and affidavits, if any, show that there is no genuine issue of a material fact and that right of the moving party to judgment as a matter of law is free from doubt. Purtill v. Hess, 111 Ill. 2d229, 489 N.E. 2d 867 (1986). It is clear from the foregoing that a genuine issue of a material fact exists.

The Board had a discretionary authority under Rule 810 (c) to make the determination to limit licensee's number of video game terminals. However, instead of making an informed decision, it made a secret determination which shows that a genuine issue of a material exists. This arbitrary and capricious determination is exposed and the Boards motion for summary judgment should be overruled.

## PRAYER FOR RELIEF

Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

Plaintiff prays for a declaration against each Defendant, jointly and severally, as follows:

Defendants' conduct violated Plaintiff's rights by interference with their exercise and enjoyment of

rights secured by the Constitution and laws of the United States, including due process. Such actions are in violation of 42 U.S.C. § 1983 and the due process clause of the 14th amendment of the United States Constitution.

Defendants subjected Plaintiff to a deprivation of their Rights, Privileges and Immunities provided by the Constitution, in violation of Due Process and without notice and opportunity to be heard, and without lawful authority.

Defendants, by their conduct in committing the acts and omissions complained of herein, did so maliciously, oppressively, in disregard of humanity, and in total disregard of the consequences of the aforementioned acts.

As a direct and proximate result of Defendant's actions, Plaintiff has in the past suffered, and will continue to suffer damages, including but not limited to mental anguish, emotional distress, physical injury, and loss of revenue, withstanding

Compensatory damages, against each Defendant, jointly and severally, in amount to be determined at trial in excess of $152,694.00.

Punitive Damages in an amount to be determined at trial.

Nominal Damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, together with interest, costs and attorney's fees pursuant to 42 U.S.C. § 1988, and any other relief the Court deems just and appropriate.

## TRIAL BY JURY

Trial by jury is hereby demanded of all issues so triable for each count of this complaint.

RESPECTFULLY SUBMITTED

By: _____
Charles J. Zuganelis
Attorney for Dolly's Café, LLC d/b/a Lulu's Place

CHARLES J. ZUGANELIS
Attorney for Plaintiff
P.O. Box 31582
Chicago, IL 60631
708-516-6030
zuganelispc@ymail.com

14

# EXHIBIT "A"



EXHIBIT
6
(8 pages)
IGB

02/14/2018

# ILLINOIS GAMING BOARD
160 North LaSalle Street, 3rd Floor
Chicago, Illinois 60601
312-814-4700



# VIDEO GAMING
# LOCATION LICENSE APPLICATION

Name of Location License Applicant (as registered with the Illinois Secretary of State) :

**Dolly's Cafe LLC**

IGB Web ID #   **150703651**

[X] Licensed Retail Establishment

[ ] Licensed Truck Stop Establishment

[ ] Licensed Veterans Establishment
organized under 501(c)(19) of the Internal Revenue Code

[ ] Licensed Fraternal Establishment
organized under 501(c)(8) or (c)(10) of the Internal Revenue

| | |
|---|---|
| Name of Applicant | Dolly's Cafe LLC |
| Doing Business As (D/B A) | Lulu's Place |
| Federal Employer Identification Number (FEIN) | 46-3410507 |

| | |
|---|---|
| Street Address of Premises to be Licensed | 210 Penny Avenue   Unit C |
| City  State  Zip Code | East Dundee            IL    60118 |
| County | Kane |

| | |
|---|---|
| Mailing Address (if different) | 2720 Dundee Road    #274 |
| City  State  Zip Code | Northbrook             IL    60062 |

| | |
|---|---|
| Foreign State   Foreign Country (if applicable) | United States |
| Foreign Phone   Foreign Zip (if applicable) | 60062 |

| | | |
|---|---|---|
| Phone | BUS | 847-714-4242 |
| Phone | | |
| Phone | CELL | 847-712-5100 |

| | |
|---|---|
| Email Address | ruru711@aol.com |
| Email CC to | |
| Website Address | |

| | | |
|---|---|---|
| Illinois Business Authorization Certificate of Registration Location Code | 045-0046-6-002 | |
| Illinois Business Tax (IBT) # | 4128-3716 | |
| Illinois Liquor License # | 1A-11-27958 | expires  09/30/2018 |
| Local Liquor License # | 29   "E-2 " | expires  06/30/2018 |
| Local Liquor License Issuing Authority | Village of East Dundee | |

## Applicant's Business Structure

| | |
|---|---|
| [ ] Individual / Sole Proprietor | [ ] Corporation (non-publicly held) |
| [ ] Partnership | [ ] Publicly Held Company |
| [X] Limited Liability Company (LLC) | [ ] Not-for-Profit Corporation or Charitable Organization |
| | [ ] Municipal Location |

| | |
|---|---|
| State where Applicant formed or incorporated | IL |
| Date of formation or incorporation | 08/12/2013 |

Page 2 of 8

## Registered Agent

| | |
|---|---|
| Name of Registered Agent | Louise Rycraft |
| Address | 2720 Dundee Rd.Unit 274 |
| City  State  Zip Code | Northbrook                    IL    60062 |
| Business Phone | 847-712-5100 |
| Email Address | ruru711@aol.com |

## Legal Services Representative

| | |
|---|---|
| Name of Legal Services Representative | |
| Address | |
| City  State  Zip Code | |
| Business Phone | |
| Email Address | |

## Financial Information

A. Has the Applicant, any of its owners listed herein, or the Video Gaming Manager, been given or offered anything of value, including but not limited to a loan or financing arrangement, as an incentive or inducement to locate Video Gaming Terminals on the Applicant's premises? If yes, explain.

No

B. Except as otherwise disclosed in this Application and as allowed by 230 ILCS 40.25(C), does the Applicant, any of its owners listed herein, or the Video Gaming Manager have any agreements or understandings, or an intent to enter into any agreement or understanding, with any Individual or Business Entity related to sharing or allotting any sums of money or anything of value derived from the proposed Gaming Operation? If yes, explain.

No

## Establishment Information

*In answering questions (A) - (D) below, the distance from a proposed or existing Licensed Video Gaming Location to a preexisting facility, riverboat, school or place of worship shall be measured by drawing a straight line between the closest part of any building used for the proposed or existing Licensed Video Gaming Location and the closest part of any building used for the facility, riverboat, school or place of worship. When located within a subsection of property by virtue of a lease, deed, or other arrangement (e.g., a tenant in a shopping center or commercial condominium), measurement shall be from the subsection of property (i.e., boundaries of the proposed or existing Licensed Video Gaming Location's*

A. Is the proposed Licensed Video Gaming Location located within 1000 feet of a preexisting facility operated by an organization licensee, licensed under the Illinois Horse Racing Act of 1975 (230 ILCS 5/1 et seq.)?                                              No

B. Is the proposed Licensed Video Gaming Location located within 1000 feet of the home dock of a preexisting riverboat licensed under the Riverboat Gambling Act (230 ILCS 10/1 et seq.)?          No

C. Is the proposed Licensed Video Gaming Location located within 100 feet of a preexisting elementary or secondary public or private school registered with or recognized by the State Board of Education, or a place of worship incorporated under the Religious Corporation Act (805 ILCS 110/0.01 et seq.)?                                          No

D. Does the Applicant's proposed Licensed Video Gaming Location share physical space with another Video Gaming Location or applicant?                              No

## Legal, Tax, Licensing Information

A. Has the Applicant ever been convicted of a felony offense?                        No

B. Has the Applicant ever been convicted of a crime involving dishonesty, gambling and or moral turpitude?                                                      No

C. Does Applicant owe any past dues taxes, fees or obligations to the State of Illinois?        No

D. Has the Applicant, any of its owners listed herein, or the Video Gaming Manager ever been involved in a Gaming business or a Gaming Operation in any state, country, or other jurisdiction? If yes, explain in detail, and provide the state or jurisdiction, date(s), the number of any license or permit issued, and any disciplinary action related thereto.          Yes

    Dolly's Cafe in East Dundee,Il.
    Gaming License # 130705994
    From 5/2014 - current

E. Has the Applicant, any of it owners listed herein, or Video Gaming Manager ever facilitated, enabled, or participated in the use of coin-operated amusement devices for gambling purposes? If yes, explain.                                                      No

F. If the Applicant is an Individual (Sole Proprietor), Illinois Compiled Statutes 100 10-65(c)
requires applications for renewal of a license or a new license to certify, under penalty of perjury,
that he or she is not more than 30 days delinquent in complying with a child support order. Failure
to certify shall result in disciplinary action, and making a false statement may subject the licensee to
contempt of court. Are you more than 30 days delinquent in complying with a child support
order? (Note: if you are not a Sole Proprietor or not subject to a child support order, answer
'no.') If yes, explain.                                                                    No

## Individual (LLC Member)

| | |
|---|---|
| SSN | 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 |
| Last Name | Rycraft |
| First Name / Middle Name | Louise                    Florence |
| Also Known As (AKA) | Suffix |
| Maiden Name | Kopernik |
| Title or Position | member |
| Sex | FEMALE |
| Date of Birth | 09/18/1952 |
| | |
| Address | 1725 Western |
| City  State  Zip Code | Northbrook               IL    60062 |
| | |
| Foreign State / Country | |
| Foreign Phone  Foreign Zip | |
| | |
| Phone     BUS | 847-714-4242 |
| Phone     CELL | 847-712-5100 |
| Phone | |
| | |
| Email Address | ruru711@aol.com |
| Website Address | |

Has the Business Entity or Individual ever been convicted of a felony offense?                    **No**

Has the Business Entity or Individual ever been convicted of a crime involving dishonesty,        **No**
gambling and or moral turpitude?

Individual is (check each that applies)

[X] Video Gaming Manager      [ ] Director / Board Member      [X] Officer

Percent of direct equity ownership in the Applicant (regardless of the class of          **100.0000%**
shares)

If you have an Indirect Interest of a pecuniary nature in the Applicant, disclose          **0.0000%**
the percent of indirect ownership in the Applicant

Describe in detail how you have
an Indirect Interest in the
Applicant (include all
intermediary entites)

## Verification

Undersigned, the duly authorized agent of the Applicant, its owners and the Video Gaming Manager identified in this Application, swears and certifies under penalty of law that all answers and information provided in this Application and associated documents are true, correct and complete to the Best of my Knowledge after substantial inquiry. Applicant acknowledges that any misrepresentation, failure to reveal information or omission is grounds for denial of a license and or revocation of any license for which this Application is submitted. Applicant is under a continuing duty to disclose promptly any changes in the information provided in the Application and additional information and materials submitted to the Illinois Gaming Board ("Board"). The duty to make such additional disclosures shall continue throughout any period of licensure granted by the Board.

I, the duly authorized agent of the Applicant, its owners and the Video Gaming Manager identified in this Application, have read this Verification and understand its terms. On behalf of and in accordance with the instructions of the Applicant and its owners identified in this Application, I execute this Verification with full knowledge that they will be bound hereby.

Authorized agent completing this form: **Louise Rycraft**

Office/relationship to Applicant: **member**

Date: **October 14, 2015    8:32 am**

## Release of All Claims

In consideration of the assurance by the Illinois Gaming Board ("Board") that no vote on this Application will be taken except after a deliberate investigation of the Applicant, the Applicant and its owners identified in this Application do for themselves, their heirs, executors, administrators, successors, assigns, agents, beneficiaries, and any other person or entity that has or may have an interest in this Application and the Video Gaming Operation referred to therein, hereby release, remise, and forever discharge the State of Illinois, the Board, its members, agents, and employees, from any and all manner of actions, causes of action, suits, debts, judgments, executions, claims and demands whatsoever, known or unknown, in law or equity, which the Applicant and its owners identified in this Application ever had, now have, may have, or claim to have against any or all of said entities or individuals arising out of or by reason of the processing or investigation of or other action relating to the Application.

I, the duly authorized agent of the Applicant and its owners identified in this Application, have read this Release of all Claims and understand its terms. On behalf of and in accordance with the instructions of the Applicant and its owners identified in this Application, I execute this Release of all Claims with full knowledge that they will be bound hereby.

Authorized agent completing this form: **Louise Rycraft**

Office/relationship to Applicant: **member**

Date: **October 12, 2015    9:35 pm**

## Acknowledgement

Applicant acknowledges that any license or any interest in any license issued by the Illinois Gaming Board ("Board") does not create a property right, but a revocable privilege granted by the State, and that subsequent legislation, regulation or local laws may diminish the value of any license issued by the Illinois Gaming Board. Applicant acknowledges that a county or municipality may, pursuant to 230 ILCS 40/27 or any other applicable law, prohibit video gaming in its political subdivision within which Applicant does business pursuant to a license issued by the Board, and that upon such event (1) Applicant shall cease and desist all Video Gaming Operations in that political subdivision subject to the prohibition, and (2) all Video Gaming Terminals in the political subdivision subject to the prohibition shall be immediately disabled by the Board.

If this Application is approved and a license is granted by the Illinois Gaming Board, Applicant acknowledges that it will have a duty to ensure that the connection with the central communications system and Applicant's associated Video Gaming Equipment is properly maintained. Applicant acknowledges that connection with the central communications system shall be installed exclusively by a vendor so designated for such by the Illinois Gaming Board in accordance with the Board's approved technical standards, and that no connection shall be made unless all required fees for the equipment and connection are paid in advance in accordance with instructions received from the vendor or the Board. Installation of equipment and connection to the central communications system is done by appointment only. Scheduled installation and connection appointments are strictly enforced. If the licensed location is not available for installation at the scheduled time, an additional service charge may be charged to the licensed location and must be paid prior to installation and connection to the central communications system.

I, the duly authorized agent of the Applicant, have read this Acknowledgement and understand its terms. On behalf of and in accordance with the instructions of the Applicant, I execute this Acknowledgement with full knowledge that the Applicant will be bound hereby.

Authorized agent completing this form: Louisa Rycraft

Office/relationship to Applicant: member

Date: October 12, 2015   9:37 pm

# EXHIBIT "B"



Fox Rothschild

WILLIAM BOGOT
Direct Dial (312) 517.9205
Email Address WBogot@FoxRothschild.com

October 31, 2016

*Via Email and US Mail*
Mr. Mark Ostrowski, Administrator
Mr. Agostino Lorenzini, General Counsel
Illinois Gaming Board
160 North LaSalle Street, 3rd Floor
Chicago, Illinois 60601

    Re:    Dolly's Café LLC d/b/a Lulu's Place (150703651)

Dear Messrs. Ostrowski and Lorenzini:

    My firm represents Dolly's Café LLC d/b/a Lulu's Place (Lulu's). Lulu's submitted its video gaming location application on or around October 16, 2015 (over a year ago), however to date there has been no decision by the Illinois gaming Board ("IGB" or "Board") as to Lulu's licensure. We believe that the Board may have postponed ruling on Lulu's application because it is located next door to Dolly's Café LLC ("Dolly's Café") (which is doing business as itself, Dolly's cafe). Both Dolly's and Lulu's are owned by the same entity, and both are in the same strip mall. As such, we believe that the IGB has not licensed Lulu's because it believes that doing so would violate Video Gaming Rule 810(c). For the reasons set forth below, licensure of Lulu's would not run afoul to Rule 810(c), and thus we respectfully request that the Board consider the merits of Lulu's video gaming location application.

    Although Lulu's and Dolly's share a common ownership, they are not operating as a single business, and licensure of Lulu's would not be contrary to the intent of the Act and the integrity of video gaming in the State of Illinois. Attached hereto as Exhibit A are photos of Dolly's both from the outside and inside. Attached hereto as Exhibit B are photos of Lulu's both from the outside and inside. Dolly's is themed as a Café, and has a very different interior and exterior design than Lulu's. In contrast, Lulu's is themed as a "Gaming Place," with amusement games and — hopefully — video gaming terminals. As you can see from the photos, the two locations are not being operated as a single business. Both locations have separate leases and utilities.

    Licensure of Lulu's would be in accord with, not contrary, to the intent of the Act and the integrity of video gaming in Illinois. The additional location has filled a vacant piece of real



estate and invested substantial monies in the economy to develop the space. These efforts have contributed to the state and local economy.

Town Fair's respectfully requests that the Board consider Fair's video gaming location application for Licensure. Should you have any questions, please feel free to contact me.

Sincerely,

William Bogot

WB:
Enclosures

2

*The Law Offices of*
## Charles J. Zuganelis
*P.O. Box 31582*
*Chicago, Illinois. 60631*

June 30, 2017


ILLINOIS GAMING BOARD
Mark Ostrowski, Administrator
Agostino Lorenzini, General Counsel
160 N. Lasalle St., 3rd Fl.
Chicago, IL. 60601


Re: Dolly's Café, LLC dba Lulu's Place.


Messrs. Ostrowski and Lorenzini:

I represent Dolly's Café, LLC dba Lulu's Place. I am sure that you are aware that Lulu's applied
as a video gaming location on or about October 12, 2015 and has yet to receive a decision by the
Gaming Board.

We are fully aware of what is going on in the video gaming industry/licensing and that the board
has taken a more careful approach so as not to license what it calls "mini casinos." However, we
are confident that Lulu's application and approval would not create such a "casino."

There have been instances where the Board has allowed more than one business under one roof
by the same owner as in "Ten Pennies Parlor" and "Ten Pennies Too," in Oregon, Illinois. Both
businesses not only are under the same roof, but also shared an awning. (see photo attached).
Similarly, "Macho Taco" has two gaming licenses at one location. Lulu's Place is not unlike
either of these two establishments. However, the most important aspect of Dolly's Café and
Lulu's Place that differs from "Ten Pennies" and "Macho Taco," is that they will not be run as a
single business. And based on the foregoing, we are confident that Dolly's Café and Lulu's Place
will not run afoul of the Gaming Board Rules or State Statutes.

Finally, according to the Administrative Code 1800.615: "If the Board finds that an applicant is
not suitable for licensure, it shall issue the applicant a notice of denial." The Board in this
instance has neither approved nor denied the application by Lulu's Place and it is going on two
years since they submitted the application. The Code does not define a time limitation upon
which the Board must make a decision but it seems rather unconscionable to make an applicant
wait for this length of time.

708-222-9040 (Office) * (888)552-7693 (FAX) * (708)516-6050 (Cellular)
zuganelispc@ymail.com

It is our hope that the Board now makes a determination one way or the other so that we may move forward. However, if the Board does not now make such a decision within a reasonable time, Lulu's Place is prepared to litigate the issue to compel the Board to do so.

Very truly yours,


Charles J. Zuganelis

cjz/enc.



Photo Info

✕

- Change Language
- Send Feedback
- Keyboard Shortcuts (?)
- Terms of Use
- Privacy & Cookies
- Help & Support

- Technology Previews
- Account Info

# EXHIBIT "C"

**ILLINOIS GAMING BOARD**

Bruce Rauner • Governor    Don Tracy • Chairman    Mark Ostrowski • Administrator

160 North LaSalle  ♦  Suite 300  ♦  Chicago, Illinois 60601  ♥  tel 312/814-4700  ♦  fax 312/814-4602

November 28, 2017

**Via Email & Certified U.S. Mail**

Dolly's Cafe LLC d/b/a Lulu's Place
c/o Louise F. Rycraft
210 Penny Avenue  Unit C
East Dundee, IL  60118
ruru711@aol.com

   Re: **Video Gaming Terminal Restriction for Dolly's Café, LLC d/b/a Lulu's Place
     (150703651)**

Ms. Rycraft:

On October 16, 2015, **Dolly's Café, LLC d/b/a Lulu's Place (150703651)** submitted a Location License Application to the Board for consideration.  Pursuant to Section 78 of the Video Gaming Act, (the "Act"), the Board has jurisdiction over video gaming and the authority to prescribe rules and regulations under which video gaming shall be conducted.  230 ILCS 40/78.

Illinois Gaming Board Rule 810(c) states:

> "When two or more adjacent businesses appear to the Administrator to be a single business, *or are operated by the same or commingled ownership*, then the Administrator may limit those businesses to the maximum number of video gaming terminals.  The maximum will be the number permitted under Illinois law for one business as the total number of video gaming terminals authorized for both or more such businesses, where the Administrator determines that the limitation would further the intent of the Act and the integrity of video gaming in the State of Illinois."  11 Ill. Admin. Code § 1800.810(c).

Pursuant to 230 ILCS 40/25(e), the Video Gaming Act, the maximum number of video gaming terminals a business may have is five.

During the investigation of your application, the Board determined that you are also the majority owner of Dolly's Cafe LLC d/b/a Dolly's Cafe, a licensed Video Gaming Establishment (License No. 130705994).  Lulu's Place is in the same shopping center and immediately adjacent to Dolly's Cafe.  As owner of each location, you leased from the same lessor, R120, LLC, the premises where each of your establishments are located.  Consequently, pursuant to Board Rule 810(c), the Administrator has determined that limiting Dolly's Café and Lulu's Place to a total of

5 video gaming terminals would further the intent of the Act, and the integrity of video gaming in the State of Illinois.

Please be aware that, pursuant to Board Rule 1800.615, you may request a hearing of this determination. If you chose to submit a hearing request, it must be submitted within ten (10) days of delivery of this Notice. Your request may be denied if it is submitted late or if it fails to comply with any requirement listed in Rule 615.

If you request a hearing, the Board will review your request and issue a written response after its January 2018 Board Meeting. If the Board grants a hearing to you, the hearing will be a *de novo* proceeding where you will have the burden of proving by clear and convincing evidence your suitability to maintain 5 video gaming terminals at each establishment.

Sincerely,

Mark Ostrowski
Administrator